RITA ROSE SABATKA, APPELLEE, V. RALPH EDWARD SABATKA, APPELLANT.

511 N.W.2d 107

Filed February 4, 1994.   No. S-92-307.

John H. Sohl for appellant.

Tom Dawson, of Dawson & Brown, P.C., for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Fahrnbruch, and Lanphier, JJ., and Grant, J., Retired.

Caporale, J.

Claiming error in the failure to find a material change in circumstances, the respondent father, Ralph Edward Sabatka, appealed the district court's dismissal of his petition for a reduction of his child support obligation to the Nebraska Court of Appeals. Under the authority granted us by Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992) to regulate our caseload and that of the Court of Appeals, we removed the cause to this court and now affirm the judgment of the district court.

The father and the petitioner-appellee mother, Rita Rose Sabatka, were married on June 25, 1977, and produced three children who now range in age from 16 to 11 years. The marriage was dissolved by a decree dated March 15, 1989, which awarded custody of the children to the mother and required the father to pay child support of $337.60 per month so long as all the children remain unemancipated. The decreed child support was based upon the Nebraska Child Support Guidelines, utilizing the father's then net monthly income of $922.08 and the mother's then net monthly income of $984.33.

At that time, the father was employed as a warehouse clerk for a floorcovering company. His duties included the rolling and unrolling of carpets, cutting them to length, rolling and unrolling vinyl rolls, loading and unloading trucks, and delivering goods to jobsites.

On June 7, 1989, the father sustained neck and back injuries in an automobile accident and was diagnosed as suffering from a thoracic back strain. The treating physician opined that by December 1990, the father had reached his maximum medical recovery and that he suffered a 25-percent disability, being limited in his ability to lift, bend, and push without pain.

After the accident, the father's employer tried to reduce the

father's workload on certain days by using three employees to lift heavier rolls of carpeting rather than two. Nonetheless, the father continued to experience chronic back pain and sleep loss due to the lifting involved in his job. In July 1991, 2 years after the automobile accident, the father decided that he could not continue to work at his job and voluntarily terminated his employment.

Rather than seeking another job, even one requiring no lifting, the father, although holding an associate degree in diesel technology, elected to pursue more education in order to get a better job. Thus, in August 1991, he enrolled at a state college to pursue a bachelor of science degree with an emphasis in power and transportation. While he continues to experience some back pain if he remains seated longer than half an hour, he is able to attend his classes and planned to attend four more semesters of classes beyond the spring of 1992 to complete his course of study.

It appears that his tuition is paid in full under the provisions of the Workers' Compensation Act, as are his textbooks. In addition, he receives $17 per week in disability benefits. He will receive these compensation benefits for the first 2 years of his education, but will not have this assistance in his final year of study. He also received a scholarship from a veterans' group which has paid, or will pay, him $500. He works up to 16 hours a week as a grocery store clerk, earning $294.66 gross per month, netting him $272.12 per month.

The sale of the marital residence following the entry of the dissolution decree produced $5,600 for the father, $5,000 of which remained in savings at the time of the modification hearing.

We begin our analysis by recalling that the modification of child support is an issue entrusted to the discretion of the trial court, and although reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994); *Brewer v. Brewer*, 244 Neb. 731, 509 N.W.2d 10 (1993). Where in such a case the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge

heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Reitz v. Ringer, supra; Hansen v. Hansen*, 240 Neb. 31, 480 N.W.2d 204 (1992).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993).

We have also held that a party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree and was not contemplated when the decree was first entered. *Phelps v. Phelps*, 239 Neb. 618, 477 N.W.2d 552 (1991). See, also, *Schmitt v. Schmitt*, 239 Neb. 632, 477 N.W.2d 563 (1991).

In *Phelps* and *Schmitt*, we held that the adoption of the Nebraska Child Support Guidelines in and of itself constituted a material change of circumstances sufficient to justify a reconsideration of previously ordered child support. We, in *Phelps v. Phelps*, 239 Neb. at 621, 477 N.W.2d at 555, wrote:

> In general, child support payments should be set according to the Nebraska Child Support Guidelines, which compute the presumptive share of each parent's child support obligation. [Citations omitted.] The court may deviate from the guidelines whenever the application of the guidelines in an individual case would be unjust or inappropriate. [Citation omitted.] The primary interest in determining the level of child support payments is the best interests of the children.

See, also, *Czaplewski v. Czaplewski*, 240 Neb. 629, 483 N.W.2d 751 (1992); *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991).

In explaining the material change of circumstances standard, we have written:

> Previously, this court has held that a "material change in circumstances" is a concept which eludes precise, concise definition. . . . There are certain factors, however, which the district court may consider in determining

whether a material change has occurred or not. Among those factors are: changes in the financial position of the parent obligated to pay support; the needs of the children for whom support is paid; good or bad faith motive of the obligated parent in sustaining a reduction in income; and whether the change is temporary or permanent.

*Dobbins v. Dobbins*, 226 Neb. 465, 467, 411 N.W.2d 644, 645-46 (1987). Accord, *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985); *Morisch v. Morisch*, 218 Neb. 412, 355 N.W.2d 784 (1984).

We must remember that the paramount concern and question in determining child support, whether in the initial marital dissolution action or in proceedings for modification of a decree, is the best interests of the child. *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991); *Dobbins v. Dobbins, supra*; *Wagner v. Wagner*, 224 Neb. 155, 396 N.W.2d 282 (1986).

The father urges that a parent obligated to pay child support may make an occupational or career change which reduces his ability to provide support, and so long as it is made in good faith, the future child support obligation should be based on his present income and the Nebraska Child Support Guidelines. To support this proposition he relies on three cases: *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985); *Fogel v. Fogel*, 184 Neb. 425, 168 N.W.2d 275 (1969); and *Korf v. Korf*, 221 Neb. 484, 378 N.W.2d 173 (1985). However, each of these cases is distinguishable from the matter now at hand.

In *Cooper v. Cooper, supra*, the ex-husband, a physician who at the time of the dissolution earned approximately $134,000 per year, sought a modification of his alimony obligation of $2,200 per month. He left his general practice after the dissolution because of concerns about his competency in his area of practice and had taken full-time employment as an emergency room specialist at a salary of $58,000 per year, planning to become board certified as an emergency room physician. The ex-wife, who had not worked prior to the dissolution, had taken employment as a histology technician, earning in excess of $18,000 per year. She relied upon this income to save for her retirement and had accumulated

substantial savings over the years.

In reversing the trial court's denial of modification and ordering that the ex-husband's alimony obligation be reduced to $1,650 per month, we noted in *Cooper* that there was no showing that the ex-husband left his former employment for the purpose of evading his responsibility to his former wife and that there was evidence he was attempting to establish himself in employment with better prospects for the future. But *Cooper* did not involve child support; therefore, there was no balancing of the need of any children in the analysis. Furthermore, a reduction of alimony from $2,200 to $1,650 per month paid to an ex-wife earning $18,000 per year may have affected her standard of living and retirement plans, but did not impair her ability to provide the necessities of life for herself.

In *Fogel v. Fogel, supra*, we affirmed the trial court's reduction of child support for three children from $600 to $399 per month. The obligor had previously been employed in sales with earnings in excess of $20,000 annually. After his sales work and income declined due to managerial duties and his being unable to negotiate a satisfactory salary arrangement, he quit his employment. After a brief attempt at another sales position, he began a career in real estate sales; at the modification hearing, his income was estimated to be $10,000 per year.

In affirming the reduction, we stated:

> There is no willful misconduct or neglect involved in the present application. [Obligor] did not leave his former employment for the purpose of evading his responsibility but because of circumstances which eventually could have affected his income. The record would justify an inference that he made serious efforts to establish himself in employment with better prospects for the future. There is no question [obligor] is a capable individual with the energy, intelligence, and enterprise to be highly successful in sales work. His present occupation can be a lucrative one, but he must have an opportunity to make the necessary adjustments to realize his potential.

> A divorce decree does not freeze [an obligor] in his employment. One may in good faith make an occupational change even though that change may reduce

his ability to meet his financial obligation to his children. [Obligee] ignores the fact that the judgment of what is fair includes not only a consideration of the circumstances of the children but of the [obligor] as well. Ordinarily, a man makes a change in his occupation with the hope of improving his prospects for the future. When parents are living together the standard of living of the children rises or falls with the changes in the [obligor's] fortunes. Should this readjustment be any different because divorce has separated them physically? We think not, unless the move is made to avoid responsibility or made in bad faith.

*Fogel v. Fogel*, 184 Neb. at 427-28, 168 N.W.2d at 277.

Although the *Fogel* obligor was forced into a career change by diminished income at his prior position, he continued full-time employment, rather than choosing to pursue further education while employed part time. Moreover, we were there affirming the trial court's ordered reduction, whereas here, we are being asked to find that the district court abused its discretion in denying a reduction.

And it is true that in *Korf v. Korf*, 221 Neb. at 485-86, 378 N.W.2d at 174, we stated: "An award of custody to a parent should not be interpreted as a sentence of immobilization. A custodial parent will not be placed in a position of deciding between custody of one's child and a different career, be it job-related or matrimonial." However, *Korf* dealt with child custody issues, not with child support issues. See, also, *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994).

In at least two cases, we have held that a strict application of the Nebraska Child Support Guidelines would be inequitable where a parent's actual earning capacity exceeds present income. In *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991), we affirmed a trial court's child support order imputing income to the husband equal to the wife's gross income of $915 per month, although the husband's actual income was estimated at $615 per month. Because this was an initial child support decree in a dissolution action, there was no issue of good faith as a basis for modification. However, we did note that "for reasons not shown, the husband works, if at all, at jobs paying less than minimum wage, thus leaving the

support of his children primarily to his wife." *Id.* at 432, 470 N.W.2d at 801.

Likewise, in reversing the trial court's reduction in child support for three of the husband's children from $600 to $225 per month, we, in *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991), concluded that although the husband's income had decreased since the decree, his earning capacity had not, and that the reduction was attributable to his personal wishes rather than matters beyond his control.

In two cases which predate the child support guidelines, we affirmed denial of requested modification of child support awards on claims of decreased income. *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985) (holding equity will not act to give relief in child support obligation of one incarcerated for criminal act); *Morisch v. Morisch*, 218 Neb. 412, 355 N.W.2d 784 (1984) (holding where needs of child remained same as when original decree entered and obligor implicitly had current capacity to repay family loan, obligor had ability to continue paying child support).

Although infrequently, other jurisdictions have also considered this issue and have generally held that, absent equities supporting the basis for reducing the ordered amount, a parent may and should be held responsible to support a child on the basis of potential income rather than a reduced present income.

In *Pattee v. Pattee*, 744 P.2d 658 (Alaska 1987), the Alaska Supreme Court reversed an initial child support order which considered only the ex-husband's income from a promissory note receivable on the sale of his business, which was held to be a fraudulent conveyance as to the ex-wife. The *Pattee* court recognized that a parent should not be " 'locked in' " to a certain career "when accepting a lower-paying position may ultimately result in personal or professional advancement." *Id.* at 662. However, it also noted that "the children of the marriage and the custodial parent should not be forced to finance the noncustodial parent's career change." *Id.* It reversed and remanded the cause for determination of child support on the basis of potential income based upon the equities. See, also, *Sansom v. Sansom*, 409 So. 2d 430, 432 (Ala. Civ. App. 1981)

(affirming trial court's denial of request to reduce child support for unemployed father who was attending law school, stating: "This court has previously held that the ability to earn, as opposed to actual earning, is a proper factor in determining the amount of child support to be awarded. . . . The lack of change in the needs of the children coupled with the [obligor's] ability to earn convinces this court that the trial court did not err"); *In re Marriage of Marshall*, 781 P.2d 177 (Colo. App. 1989), *cert. denied* 794 P.2d 1011 (Colo. 1990) (holding trial court, authorized by Colorado statute to consider parent's potential income, did not err in imputing income to husband, a licensed attorney and journeyman plumber, in excess of current income); *Moore and Moore*, 112 Or. App. 503, 829 P.2d 704 (1992) (remanding child support order in dissolution decree to apply statutory rebuttable presumption that parent is employable on full-time basis and child support should be based on such potential income if parent is unemployed or employed on less than full-time basis); *Marriage of Jonas*, 57 Wash. App. 339, 788 P.2d 12 (1990) (holding both husband, who was unemployed while attending school, and wife, who was capable of employment but chose to remain at home to care for children, were voluntarily unemployed and remanding matter to determine child support based upon earning capacity). But see *Coons v. Wilder*, 93 Ill. App. 3d 127, 416 N.E.2d 785 (1981) (holding so long as change in occupation made in good faith, child support must be based upon present ability to pay; trial court erred in refusing to reduce obligor's child support and allowing portion to be abated until education completed, whereupon support payments ordered increased to $1^{1}/_{2}$ times decreed amount until arrearages paid).

Although there is here no showing that the father's decision to return to college was not made in good faith, this is only one of the factors to be considered in determining whether there has been a material change in circumstances. Where, as in the situation before us, the needs of the children for whom support is paid will be seriously impaired if support diminishes below the ordered amount, it would be inequitable to reduce the child support in a circumstance where the father has the earning capacity required to continue to meet the present child support

order. There is here no showing that the father was unable to obtain any other suitable employment within the limits of his physical abilities, nor does the record support a contention that he will be assured employment which will not aggravate his ailment upon completion of his degree. Although the father should be free to pursue further education, he may not, under the circumstances presented here, finance it at the expense of his children.

As a result, we cannot say that the trial court abused its discretion in the denial of the father's request to modify child support.

Because of the relative novelty of the question presented by the father, the mother's motion for an attorney fee in this court is overruled.

AFFIRMED.