JOAN L. WAGNER, NOW KNOWN AS JOAN L. ROSENBERG, APPELLEE, v. LEWIS T. WAGNER, APPELLANT.

636 N.W.2d 879

Filed December 21, 2001.   No. S-00-770.

Jane F. Langan, of Rembolt, Ludtke & Berger, L.L.P., for appellant.

Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

PER CURIAM.

The appellant, Lewis T. Wagner, was previously married to the appellee, Joan L. Wagner, now known as Joan L. Rosenberg, and pays child support for a child of that marriage. Lewis voluntarily left his employment at Central States Indemnity Company of Omaha (Central States) to accept an appointment as Nebraska's Director of Insurance, resulting in a reduction in Lewis' annual income. Joan filed an application to modify the decree, and the district court calculated Lewis' child support obligation based on his income at Central States. Lewis appeals. We reverse because the record shows that Lewis changed employment in good faith and nothing in the record indicates that the child's needs will be impaired.

## BACKGROUND

The Wagners were divorced in 1994. Under the original decree, Lewis was required to pay $587 per month in child support based on an income of $88,000. The decree was later modified, and his child support obligation was raised to $669 per month. He was also responsible for providing health insurance

for the child and was required to make available to the child a coinsurance fund for noncovered medical expenses up to $5,000. He was awarded the dependency exemption for the child, contingent upon his being current on his obligation to pay child support and daycare expenses at the end of each calendar year.

In October 1999, Joan filed an application to modify the decree. The record shows Joan is employed by the Lincoln Public School District as a teacher and earns $3,333 per month. In the application, she alleged that Lewis had voluntarily left his employment for another position, no longer had a coinsurance fund, and had refused to pay his share of uncovered medical expenses. She requested a review of the amount of the child support award and insurance provisions and requested attorney fees.

Lewis filed an answer and cross-application for modification. In the cross-application, he requested that should the court determine that a material change in circumstances had occurred, he be awarded the dependency exemption. Joan filed a reply denying that Lewis was entitled to the dependency exemption.

The record shows that before January 7, 1999—Lewis' starting date as Director of Insurance—he was employed by Central States as vice president of government relations. In 1997, he earned $92,170 and received a bonus of $27,651, resulting in total compensation of $119,821. In 1998, he earned $92,170, received a bonus of $65,151, and received other compensation of $16,000, resulting in total compensation of $173,321. The record shows that he earned dividends of $3,046 in 1999. Lewis left Central States and accepted an appointment as the Director of Insurance. He earns approximately $70,000 in that position.

Lewis testified that he voluntarily left his employment at Central States because he believed the profitability and the ability of Central States to survive was short lived. The company specialized in a single area of insurance that could be affected by the passage of a federal act. He also was concerned that he did not receive a salary increase in 1998. A former Director of Insurance testified that in his opinion, the passage of the federal act would have a dramatic adverse effect on insurance companies like Central States that write insurance for credit disability. On cross-examination, the former director conceded that serving as Director of Insurance had enhanced his career.

The parties stipulated that Lewis did not make the career change in bad faith. During trial, the court questioned Lewis about former Directors of Insurance who had found more lucrative positions after they served in that position. The court asked Lewis what part that knowledge played in his decision to accept the appointment. He admitted that usually the position serves as a "jumping stone to other places." He stated that because he was 56 years old and was hoping to serve as Director of Insurance for 8 years, he felt he might be able to act as a consultant after his tenure as Director of Insurance instead of simply retiring.

The district court entered a detailed order finding that Lewis earned $92,170 in 1998 and that his current income was approximately $75,000 per year. The court determined child support based on Lewis' earning capacity, excluding bonuses, and determined that that capacity was $92,170 per year. As a result, the court found that child support should be increased to $854 per month, and the award was made retroactive to January 1, 2000. The court ordered that the decree would remain in effect on all other issues.

## ASSIGNMENTS OF ERROR

Lewis assigns that the district court erred in (1) refusing to use his present income when calculating child support, (2) concluding that his earning capacity was equal to his base rate of pay with Central States, (3) retroactively increasing child support, and (4) failing to grant him the dependency exemption for the child.

## STANDARD OF REVIEW

■ Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Workman v. Workman, ante* p. 373, 632 N.W.2d 286 (2001).

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Kirchner v. Wilson, ante* p. 607, 634 N.W.2d 760 (2001).

## ANALYSIS

Lewis contends that the district court abused its discretion by calculating his child support obligation based on his salary at Central States. He argues that because he left his job at Central States in good faith and because of a probable decline in income, child support should have been calculated based on his present income.

A party seeking to modify a child support order must show a material change of circumstances which occurred after the entry of the original decree or a previous modification, and which was not contemplated when the prior order was entered. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). We have held that amendment of the child support guidelines after the entry of a decree constitutes a material change in circumstances to justify a modification of a parent's child support obligation. See *id*. In this case, the child support guidelines were amended after the entry of the decree. There is no dispute that a material change in circumstances warranting modification of child support is present. Therefore, the issue is whether the court abused its discretion when it calculated Lewis' child support obligation based on the income he earned at Central States.

In general, child support payments should be set according to the Nebraska Child Support Guidelines, which compute the presumptive share of each parent's child support obligation. *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). The Nebraska Child Support Guidelines, paragraph D, provide that "if applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities."

We have held that child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in the amount of that parent's support obligation would seriously impair the needs of the children. See, generally, *Sabatka v. Sabatka, supra*. Under those circumstances, whether the decision to leave employment was made in good faith was only a factor to be considered and an award of child support could be based on a parent's earning capacity even when the parent acted in good faith. *Id*. But we have also stated

that a divorce decree does not require a parent to remain in the same employment and that child support may be calculated based on actual income when a career change is made in good faith. *Fogel v. Fogel*, 184 Neb. 425, 168 N.W.2d 275 (1969).

In *Fogel*, a parent was employed as a salesman, earning $20,000 annually. He left his employment after his work was curtailed by managerial duties and he could not work out a satisfactory salary arrangement with his employer. He then took another sales position on the promise that it would lead to an executive position. When it became apparent that the promise would not be fulfilled, he decided to enter the real estate field. He estimated that his annual earnings for the next year would be $10,000 and would increase substantially when he later became eligible to sell commercial property. The district court reduced his child support obligation. On appeal, this court affirmed on the basis that the career change was made in good faith. We stated:

> A divorce decree does not freeze a father in his employment. One may in good faith make an occupational change even though that change may reduce his ability to meet his financial obligation to his children. . . . Ordinarily, a man makes a change in his occupation with the hope of improving his prospects for the future. When parents are living together the standard of living of the children rises or falls with the changes in the father's fortunes. Should this readjustment be any different because divorce has separated them physically? We think not, unless the move is made to avoid responsibility or made in bad faith.

*Id.* at 428, 168 N.W.2d at 277.

Lewis left his position at Central States because he was concerned that the company would not remain profitable. Furthermore, the parties stipulated that he changed employment in good faith. Joan did not dispute that Central States might not remain profitable. Because of his age, he will likely be of retirement age when his term as Director of Insurance ends. At that time, he testified that he hopes to do some consulting work. Unlike *Sabatka*, Lewis did not initiate proceedings to reduce his child support and nothing in the record indicates that the amount he was obligated to pay impaired the needs of the child.

930

Under these circumstances, when the needs of the child are not seriously impaired and the career move was made in good faith, the court abused its discretion when it calculated Lewis' child support obligation based on his income at Central States. Accordingly, we reverse, and remand for a recalculation of child support. Because we reverse for a recalculation of support, we do not address Lewis' remaining assignments of error.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

McCORMACK, J., participating on briefs.