CAROLINE GREER BROCKMAN, APPELLEE, V.
TODD DEAN BROCKMAN, APPELLANT.

646 N.W.2d 594

Filed June 21, 2002. No. S-00-1082.

Michael Gallner for appellant.

Caroline Greer Brockman, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Todd Dean Brockman appeals from the order of the district court dissolving his marriage to Caroline Greer Brockman and ordering him to pay child support. The primary issue presented in this appeal is whether the district court erred in ordering Todd to set aside part of a lump-sum workers' compensation settlement as security for his child support obligation.

## BACKGROUND

Todd and Caroline were married on November 7, 1987, and had three children, who were 12, 11, and 7 years old, respectively, at the time of trial. Todd and Caroline separated in May 1998, and Caroline filed a petition for legal separation on June 8. Eventually, Todd filed a cross-petition for dissolution of marriage, which was joined by Caroline. The case went to trial on March 22, 2000.

### CAROLINE'S INCOME

Caroline testified at trial that she has multiple sclerosis, which affects her ability to secure employment and prevents her from working. Caroline stated that it had "been a long time" since she had been employed full time. Caroline testified that she and the children each received $94 per month from Social Security due to Todd's disability and received aid to dependent children payments of $62 per month. Caroline stated that she and the children received $418 per month in food stamps. Caroline testified that she had applied for disability benefits, but, at the time of trial, her eligibility for benefits was the subject of an appeal. Caroline stated that sometimes her family helped her make up the difference between her income and expenses.

### TODD'S INCOME

Todd testified that he had received workers' compensation benefits for a 1993 back injury. Todd was found by the Iowa Workers' Compensation Commission to have a 25-percent permanent whole body disability. The record contains a contested

case settlement in which Todd settled his workers' compensation case for a lump-sum payment of $130,000. After the payment of attorney fees and outstanding medical expenses, Todd was to receive $63,665.33. The record also contains checks, drawn on the trust account of Todd's attorney, which show disbursal of the lump-sum award. After Todd's attorney fees and medical bills were paid, Todd received a check in the amount of $62,618.71. The settlement released Todd's employer from all future liability for Todd's work-related injury, including liability for future medical expenses.

Todd also testified that he received, before child support was deducted, $713 per month in Social Security benefits. The record also contains pay stubs for a job with Anderson Drywall, Inc., which Todd held between February and September or October 1999. Todd earned $10 per hour as regular wages and $15 per hour for overtime. While Todd's hours varied during his employment, Todd averaged between 30 and 40 hours per week and often worked overtime. Todd testified that he left this job because he reaggravated his back injury in October 1999. Todd's final paycheck was dated September 9, 1999—8 days after the date on the $62,618.71 check to Todd from his workers' compensation settlement.

The record indicates that on September 30, 1999, Todd had approximately $38,000 remaining from his workers' compensation settlement. Todd testified that he had spent approximately $24,000 in 1 month on medical and other expenses. Todd testified that he was not working based on medical instructions, that he was still seeing doctors, that there was no surgery that could help his condition, and that his medication cost approximately $200 per month. No independent evidence was presented to substantiate Todd's testimony in this regard, or to account for the $24,000 that had been spent in September 1999. When cross-examined on that issue, Todd testified that the money was expended because "I had other people I owed money to that supported me."

## DISTRICT COURT JUDGMENT

After trial, the district court entered an ex parte order on May 17, 2000, which prohibited Todd from disposing of his assets. The entry of a final decree of dissolution was delayed for some time, as Todd discharged his counsel and refused to approve the

proposed decree. Finally, the district court entered a final decree of dissolution on September 14, 2000.

The district court ordered Todd to pay child support to Caroline in the amount of $541.31 per month. The district court's calculation of Todd's child support obligation is based on a gross income for Todd of $1,733.33 per month, or $400 per week, and a gross income for Caroline of $183 per month. The district court further stated that

> [Todd] was injured in a work-related accident which was recently settled. The settlement is in payment for benefits calculated at 2,085 weeks in the future. Given [Todd]'s children's ages, he has a child support obligation that will run for 622 weeks in the future. [Todd]'s lump sum settlement is subject to the payment of child support, to the extent of 30% of the award.

The district court ordered that

> [Todd] shall put the sum of $19,085.61 from the net proceeds of [Todd]'s worker's [sic] compensation claim in a Certificate of Deposit with the children as beneficiary to fund his obligation to pay child support. If [Todd] fails to may [sic] his child support payments then [Caroline] can invade the Certificate of Deposit to make the child support payments; This Document will act as sufficient authority to enable the bank to give the money directly to Caroline Brockman. If [Todd] does make the child support payments then at the last child's majority [Todd] would be awarded the money plus the interest.

## ASSIGNMENTS OF ERROR

Todd assigns that the district court erred in (1) including Todd's workers' compensation award as child support, (2) requiring Todd to hold his workers' compensation award in trust to secure his child support obligations, and (3) calculating the amount of child support to be paid in that it found Caroline's earning capacity to be zero and included Todd's workers' compensation award in its calculation.

## STANDARD OF REVIEW

The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the

trial court will be affirmed in the absence of an abuse of discretion. *Heesacker v. Heesacker*, 262 Neb. 179, 629 N.W.2d 558 (2001). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Crawford v. Crawford*, 263 Neb. 37, 638 N.W.2d 505 (2002). In child support cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994).

## ANALYSIS

### CONSIDERATION OF LUMP-SUM AWARD

Todd's first assignment of error is that the district court erred in "including [Todd]'s workers [sic] compensation award as child support." Todd's arguments supporting this assignment of error are not entirely clear. However, those arguments, as best we can interpret them, are without merit.

Todd first contends that the district court erred in that it "both deviated from the child support guidelines and attempted to apply them in the same case." Brief for appellant at 15. There is no basis in the record for Todd's claim that the district court deviated from the child support guidelines. The child support order entered by the district court is consistent with the amount prescribed by table 1 of the Nebraska Child Support Guidelines (Guidelines), and there is no indication in the court's findings that a deviation from the Guidelines was considered. See *Brooks v. Brooks*, 261 Neb. 289, 622 N.W.2d 670 (2001) (reason for deviation shall be contained in findings of decree and worksheet 5 of Guidelines should be filed in court file).

Todd also argues that the district court's order erroneously treated his workers' compensation award as income. However, it is well established that a workers' compensation award, to the extent that it compensates for lost earning capacity, may be considered as income under the Guidelines. See, generally, *Pawlusiak*

*v. Pawlusiak, ante* p. 1, 645 N.W.2d 773 (2002); *Becker v. Becker*, 6 Neb. App. 277, 573 N.W.2d 485 (1997). See, also, *In re Marriage of Swan*, 526 N.W.2d 320 (Iowa 1995).

Moreover, Todd's argument is premised on a misunderstanding of the district court's order. The district court did not determine that Todd's workers' compensation award was to be treated as income; instead, the district court simply determined that the award was available to satisfy Todd's child support obligation. The calculations made by the district court are not consistent with basing Todd's income on either his workers' compensation award or his Social Security benefits; rather, it is evident that the district court determined Todd's earning capacity based on his earnings from Anderson Drywall. While it would have been preferable had the district court specifically stated the basis for its income calculations on the record, a determination of Todd's earning capacity based on his Anderson Drywall earnings is the only conclusion consistent with the evidence.

The district court determined Todd's gross income, for child support purposes, to be $1,733.33, which is equal to a weekly gross income of $400 annualized and divided by 12. See Guidelines, paragraph D (explaining formula for determining monthly income). The apparent basis for this determination is Todd's earnings at Anderson Drywall, where Todd was paid $10 per hour and often worked 40 or more hours per week.

Under the Guidelines, paragraph D, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. *Wagner v. Wagner*, 262 Neb. 924, 636 N.W.2d 879 (2001). Earning capacity may be used as a basis for an initial determination of child support under the Guidelines where there is some evidence that the parent is capable of realizing such capacity through reasonable effort. See *State v. Porter*, 259 Neb. 366, 610 N.W.2d 23 (2000).

In this case, Todd's pay stubs from Anderson Drywall provide evidence that Todd is capable of earning $400 per week in gross income. While Todd testified that he was no longer working because of injury, the district court was not required to credit this testimony, particularly where no evidence was presented to corroborate this claim. In any event, Todd has not assigned error

relating to the basis on which the district court actually determined his earning capacity. See *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001) (error must be assigned and argued to be considered by appellate court), *modified* 262 Neb. 663, 641 N.W.2d 624. The district court's determination of Todd's income is supported by the record and does not constitute an abuse of discretion. Consequently, Todd's assignment of error is without merit.

### SECURITY FOR CHILD SUPPORT OBLIGATION

As noted above, the district court ordered Todd to set aside part of his workers' compensation award as security for his child support obligation. Todd argues that this was error. The Legislature has long given specific statutory authorization for a court, in an appropriate case, to require sufficient security to be given for the payment of alimony and child support awards. See *Lacey v. Lacey*, 215 Neb. 162, 337 N.W.2d 740 (1983). Neb. Rev. Stat. § 42-371(6) (Cum. Supp. 2000) provides with reference to child support payments that "[t]he court may in any case, upon application or its own motion, after notice and hearing, order a person required to make payments to post sufficient security, bond, or other guarantee with the clerk to insure payment of both current and any delinquent amounts." However, reasonable security for payment of child support under § 42-371(6) should be invoked only when extraordinary circumstances require it. See, *Klinginsmith v. Wichmann*, 252 Neb. 889, 567 N.W.2d 172 (1997); *Lacey, supra*; *Muller v. Muller*, 3 Neb. App. 159, 524 N.W.2d 78 (1994).

In this case, Todd was given notice and hearing on this issue well prior to the entry of the decree. Caroline filed a motion prior to trial seeking to have Todd post security for his child support obligation pursuant to § 42-371.

Based on the evidence presented at trial, we conclude that the district court's order was not an abuse of discretion. The record reflects that Todd ceased employment after settling his workers' compensation case and had spent approximately $24,000 within 1 month of receiving the settlement proceeds. The remaining proceeds of the workers' compensation settlement were the only funds available to secure Todd's child support obligation. Given

the possibility, supported by the record, that Todd would exhaust the settlement proceeds and then be unwilling or unable to pay his child support, we conclude that the district court did not abuse its discretion in ordering Todd to set aside a portion of the settlement proceeds as security for his child support obligation. Compare *Casselman v. Casselman*, 204 Neb. 565, 284 N.W.2d 7 (1979) (order requiring security proper where much of defendant's security could be lost through foreclosure proceedings). Todd's assignment of error is without merit.

### CALCULATION OF CHILD SUPPORT

Todd assigns that the district court erred in that it found "[Caroline]'s earning capacity to be zero and included [Todd]'s compensation award in its calculation." As the facts set forth above make clear, neither of the factual premises of this assignment of error is correct. The district court's calculation of child support was based on income for Caroline determined to be $183 per month, and not zero as Todd suggests. Furthermore, as set forth above, the district court did not base its calculation of child support on Todd's workers' compensation award.

In support of this assignment of error, Todd offers several brief arguments, not all of which are within the scope of his assignment of error. To the extent that Todd's arguments extend beyond his assignment of error, we do not consider them. See *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001) (errors argued but not assigned will not be considered on appeal).

Todd contends that Caroline's income should have included food stamps and disability payments. First, food stamps are means-tested public assistance benefits that are excluded from income pursuant to paragraph D of the Guidelines. See, *Hartman v. Hartman*, 261 Neb. 359, 622 N.W.2d 871 (2001); *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001). Thus, the district court did not err by excluding food stamps from Caroline's income.

Second, Todd argues that it was inequitable to count his disability benefits as income while not counting Caroline's. As noted above, the district court did not base its estimate of Todd's earning capacity on his Social Security benefits. Moreover, the record does not reflect that Caroline was receiving—or entitled

to receive—disability benefits; to the contrary, the record indicates that Caroline was not receiving disability benefits and that her eligibility for such benefits was in controversy. The district court did not err by not considering Caroline's potential to obtain disability benefits. That future contingency is left to be determined, if and when appropriate, in a subsequent proceeding to modify child support.

## CONCLUSION

For the foregoing reasons, Todd's assignments of error are without merit. We, therefore, affirm the judgment of the district court.

AFFIRMED.