IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE ON BEHALF OF ELEANOR S. V. DUSTIN S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF ELEANOR S., A MINOR CHILD, APPELLEE,

V.

DUSTIN S., APPELLANT, AND VERONICA W., APPELLEE.

Filed June 14, 2016.    No. A-15-593.

Appeal from the District Court for Saunders County: MARY C. GILBRIDE, Judge. Affirmed.

Mark A. Steele, of Steele Law Office, for appellant.

No appearance for appellees.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

In an action to establish paternity and support brought by the State of Nebraska on behalf of Eleanor S., the district court for Saunders County found that Dustin S. is Eleanor's father and ordered him to pay child support to Veronica W., Eleanor's mother. Dustin later sought to modify child support, but the district court dismissed his application for modification after finding he failed to establish a material change of circumstances. Dustin appeals, and we affirm.

## II. BACKGROUND

The earliest document in the record is an "Order Establish [sic] Paternity and Support," dated November 13, 2012. In the order, the court found that Dustin is the father of Eleanor and, pursuant to a stipulation among the parties, ordered Dustin to pay child support of $549 per month to Veronica, commencing October 1, 2012. The order stated that the amount was "in accordance with the Nebraska Child Support Guidelines," but the record before us does not include a child

support worksheet showing how the original amount of child support was calculated. The court also directed Dustin to provide health insurance for Eleanor.

On September 28, 2014, Veronica filed a pleading entitled, "Third Party Defendant's Complaint against Defendant for Establishment of Custody and Other Matters." It appears that no custody order or parenting plan had previously been entered. Veronica sought an award of legal and physical custody, with reasonable parenting time awarded to Dustin.

On December 26, 2014, Dustin filed a pleading entitled, "Defendant's Answer and Cross Claim for Custody, Parenting Time and Support." In the "Cross Claim" portion of the pleading, Dustin sought custody of Eleanor. He alternatively requested "an order modifying [his] prior child support obligation."

The matter proceeded to a bench trial on May 29, 2015. At the commencement of trial, the parties informed the court that they had reached a stipulation on all issues except modification of child support. In particular, the parties agreed to joint legal custody of Eleanor, with Veronica having primary physical custody. They also agreed on Dustin's parenting time schedule and submitted a mediated parenting plan to the court. The court approved the parties' stipulation and parenting plan.

The court proceeded to hear evidence on the issue of modification of child support. Dustin testified that for the prior 5 months he had worked as a truck accessories salesman and installer for a company in Omaha, Nebraska, earning $12 per hour. His paystub dated March 6, 2015, which was received into evidence, was for a 2-week period and showed Dustin worked 89 hours. His gross pay was $1,122, but after deducting taxes of $141.25, FICA of $85.83, and child support of $424.62, his net pay was $470.30 for this 2-week period. Another exhibit showed that Dustin was obligated to pay $326 per month in child support for another child, whom Dustin fathered with a woman other than Veronica.

Dustin testified that in 2012 when the original child support order for Eleanor was entered, he was working in the construction field. His job required him to travel for 2 to 3 months at a time, and he worked on average "16 to 20 hours a day" at a rate of "16 to 35 an hour, depending on the job." He had been a member of a union at that time, but he had since left his construction position and was no longer a union member. Dustin explained that he left his job because he "[j]ust decided it was time to come home [sic] spend some more time with family and kids."

After leaving his construction position, Dustin worked as a truck driver for approximately 6 months. However, that job required him to be away from home as well, and he "wanted to stay home even more than that." He then began working for a company in Omaha installing granite, which allowed him to be home every night. When he started his position as a granite installer, he earned $12 per hour, but after 8 months he received a raise to $15.50 per hour.

Dustin testified that while working as a granite installer, he hurt his knee "pretty bad." He filed a workers' compensation claim and was off of work for 3 months. When he returned, he was "let go just due to inconvenience of [his] knee." He explained that he was "[n]o longer eligible to qualify to be able to do the job consistently and properly." Dustin testified that he continued to suffer from his knee injury.

On cross-examination, Dustin acknowledged that at the time the original child support order was entered, child support was calculated to be $649 per month. However, at the time, the State agreed to a $100 reduction because Dustin agreed to provide health insurance for Eleanor

through his employer. Dustin testified that after leaving his construction and truck driver positions, he no longer had health insurance through his employer. Dustin admitted he left his construction job voluntarily and was not forced to quit.

Both parties submitted child support worksheets to the court for demonstrative purposes. The worksheet submitted by Dustin showed his gross income to be $2,080 per month, and Veronica's gross income to be $1,386.67 per month. The figure used for Veronica's gross income was imputed based on minimum wage, because Veronica was unemployed. Dustin's worksheet calculated the guideline amount of child support to be $355 per month.

The worksheet submitted by Veronica showed her imputed gross income to be $1,336 per month, and Dustin's gross income to be $3,333.33 per month, which Veronica's attorney indicated was the same figure used in calculating the original child support award. Veronica's worksheet calculated Dustin's child support obligation to be $534 per month.

At the conclusion of trial, the court took the matter under advisement. On June 3, 2015, the court entered a written order dismissing Dustin's application for modification of child support. The court found that at the time of the original child support order, Dustin "was employed and was earning union wages and had a union benefits package." However, Dustin "voluntarily left his employment because he wanted to work fewer hours." The court found that Dustin "earned significantly less income after his voluntary resignation from his union employment." It further found:

> The record before the court demonstrates only that the father voluntarily left employment and is currently employed at two-thirds of his previous wage. The father seeks a substantial reduction in his child support obligation as a result. The father has failed to meet his burden of demonstrating that a material change in circumstances has resulted from his good faith action.

Dustin timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

Dustin assigns as error, consolidated and restated, that (1) the district court erred in dismissing his application for modification of child support and (2) his child support obligation improperly reduces his net monthly income below the basic subsistence limitation, in violation of Neb. Ct. R., Child Support Guidelines § 4-218 (rev. 2015).

### IV. STANDARD OF REVIEW

Modification of child support is entrusted to the discretion of the trial court, and although an appellate court reviews proceedings for modification of child support de novo on the record, it will affirm the judgment of the trial court absent an abuse of discretion. *Schwarz v. Schwarz*, 289 Neb. 960, 857 N.W.2d 802 (2015). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. MATERIAL CHANGE OF CIRCUMSTANCES

Dustin assigns that the district court erred in dismissing his application for modification of child support, which the court dismissed based on its finding that Dustin failed to establish a material change of circumstances. Dustin contests this finding on two grounds: (1) he contends he established a material change of circumstances pursuant to Neb. Ct. R., Child Support Guidelines § 4-217 (rev. 2008), because his reduction in income resulted in a child support obligation that was more than 10% lower than his current child support obligation; and (2) he contends his change of occupation constituted a material change of circumstances because the change was made in good faith and not to avoid a support obligation.

Neither the State nor Veronica has filed a brief in this appeal, so their positions on the issues Dustin raises are unknown. Before addressing Dustin's arguments, we briefly summarize the general principles governing the modification of child support.

### (a) General Principles

Child support orders are always subject to review and modification. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Id*.

Courts may consider various factors to determine whether a material change of circumstances has occurred. *Id*. Among the factors to be considered are (1) changes in the financial position of the parent obligated to pay support, (2) the needs of the children for whom support is paid, (3) good or bad faith motive of the obligated parent in sustaining a reduction in income, and (4) whether the change is temporary or permanent. *Id*.

The paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child. *Id*. The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification. *Id*.

### (b) § 4-217 of Guidelines

Dustin argues that because his reduction in income resulted in a child support obligation that was more than 10% lower than his current support obligation, he established a material change of circumstances. Dustin's argument is based upon § 4-217 of the guidelines, which provides:

> Application of the child support guidelines which would result in a variation by 10 percent or more, but not less than $25, upward or downward, of the current child support obligation, child care obligation, or health care obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

In support of his argument that § 4-217 applies here, Dustin asserts that Veronica did not offer "any evidence to dispute [his] current monthly income." Brief for appellant at 11.

Dustin's child support obligation as calculated in the worksheet he submitted to the district court was $355 per month. This was calculated using a figure of $2,080 for Dustin's gross monthly income, and $1,386.67 for Veronica's gross monthly income. Dustin is correct that $355 is a variation of 10% or more, but not less than $25, from his current child support obligation of $549 per month. However, Dustin's reliance on § 4-217 depends upon the district court's acceptance of $2,080 as an accurate assessment of his current income and/or earning capacity. Dustin's reliance is misplaced, as we now explain.

The guidelines provide that for purposes of assessing a party's total monthly income, "[c]opies of at least 2 years' tax returns, financial statements, and current wage stubs should be furnished to the court and the other party at least 3 days before any hearing requesting relief." Neb. Ct. R., Child Support Guidelines § 4-204 (rev. 2008). At trial, Dustin gave a rough outline of his employment history and submitted a single paystub; no tax returns or other evidence of income was received. The paystub showed gross income of $1,122 for a 2-week period, which would amount to gross income of $2,431 per month ($1,122 for 2-week pay period x 26 pay periods per year ÷ 12 months = $2,431 per month), rather than the $2,080 figure Dustin used in his proposed child support worksheet.

However, even assuming that the $2,080 figure was an accurate assessment of Dustin's gross monthly income, the district court was not required to rely on that figure when addressing the modification of child support. Rather, "[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities." § 4-204. The Nebraska Supreme Court has used an obligor's earning capacity, rather than his or her actual income, when determining the applicability of § 4-217 in a proceeding for modification of child support. See *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

Our de novo review reveals that Dustin failed to establish that his earning capacity decreased after the original child support order was entered. In addressing this issue, our review is hampered to some extent due to the absence from the record of a child support worksheet showing how the original amount of child support was calculated. As we noted above, the only indication in the record of Dustin's income at the time the original child support order was entered is Veronica's attorney's assertion that the $3,333.33 figure contained in her proposed child support worksheet was the same figure used in calculating the original child support award.

Assuming that Dustin's gross monthly income was $3,333 at the time the original child support order was entered, Dustin has not shown that he is no longer capable of earning at that level. Dustin testified that he left his construction job because he "[j]ust decided it was time to come home [sic] spend some more time with family and kids." After leaving his construction position, he worked as a truck driver for approximately 6 months, earning an undisclosed amount. However, that job required Dustin to be away from home as well, and he "wanted to stay home even more than that." These changes in employment were motivated by Dustin's personal wishes and not the result of unfavorable or adverse conditions in the economy, changes to Dustin's health, or other circumstances affecting Dustin's earning capacity. See *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009) (obligor parent is not entitled to modification of child support where reduction in obligor's income is attributable to personal wishes and not the result of unfavorable

or adverse conditions in economy, obligor's health, or other circumstances affecting earning capacity).

Dustin asserts in his brief that the knee injury he sustained as a granite installer "prevents [him] from further working high impact construction work as previously worked." Brief for appellant at 9. However, there was no testimony from Dustin or any other witness that his knee injury prevented him from returning to a higher paying job in the construction field. Notably, Dustin did not testify as to what his job duties were when he worked in the construction field, and based on the record before us, we do not know whether his former construction position was physically demanding, or if it was supervisory in nature. Furthermore, there was no evidence establishing the extent of Dustin's knee injury or any permanent work restrictions resulting from it. Dustin testified that when he returned to work as a granite installer following the injury, he was "let go just due to inconvenience of [his] knee," and he was "[n]o longer eligible to qualify to be able to do the job consistently and properly." This testimony provided little guidance in determining the impact of Dustin's knee injury on his earning capacity. On this record, we are able to conclude only that Dustin changed employment on two occasions for personal reasons and subsequently suffered a knee injury, the impact of which on Dustin's earning capacity is undeterminable based on the evidence presented.

Because Dustin provided only minimal evidence relevant to determining his income and earning capacity, and because he failed to prove that his earning capacity decreased following entry of the original child support order, he was not entitled to rely upon the rebuttable presumption of a material change of circumstances contained in § 4-217.

(c) Good Faith Change of Occupation

Dustin also argues that he established a material change of circumstances warranting a modification of child support because his change of occupation was made in good faith and not to avoid a support obligation. Dustin maintains that his uncontested testimony established "his good faith reasoning for changing employment," specifically "for personal family reasons and to avoid being on-the-road for months at a time and to avoid long overtime days." Brief for appellant at 7-8.

The Nebraska Supreme Court has explained that a decree awarding child support does not require a parent to remain in the same employment, and that child support may be calculated based on actual income when a career change is made in good faith. *Wagner v. Wagner*, 262 Neb. 924, 636 N.W.2d 879 (2001). See, also, *Fogel v. Fogel*, 184 Neb. 425, 168 N.W.2d 275 (1969). However, the Nebraska Supreme Court has further explained that whether a career change was made in good faith "is only one of the factors to be considered in determining whether there has been a material change in circumstances." *Sabatka v. Sabatka*, 245 Neb. 109, 117, 511 N.W.2d 107, 113 (1994). As detailed previously, other relevant factors include changes in the financial position of the obligor parent, the needs of the children for whom support is paid, and whether the change is temporary or permanent. See *id*.

The Nebraska Supreme Court's decision in *Sabatka v. Sabatka, supra*, shows that even if a career change is made in good faith, that factor alone is not determinative of whether a material change in circumstances exists warranting a modification of child support. In that case, the obligor parent was employed as a warehouse clerk at the time the original child support order was entered.

Subsequently, he suffered neck and back injuries in a car accident, which impacted his ability to perform his job. The obligor voluntarily terminated his employment and returned to school with the hope of obtaining a better job. While in school, he worked part-time as a grocery store clerk, earning substantially less than his prior income.

On appeal, the Nebraska Supreme Court affirmed the dismissal of the obligor's application for modification of child support. The court noted that in prior cases it had "held that a strict application of the Nebraska Child Support Guidelines would be inequitable where a parent's actual earning capacity exceeds present income." *Id*. at 115, 511 N.W.2d at 112. The court further reasoned that, although there was no showing that the obligor's career change was not made in good faith, "[w]here . . . the needs of the children for whom support is paid will be seriously impaired if support diminishes below the ordered amount, it would be inequitable to reduce the child support in a circumstance where the father has the earning capacity required to continue to meet the present child support order." *Id*. at 117-18, 511 N.W.2d at 113. Again, this case shows that a good faith career change alone is not sufficient to warrant a modification of child support.

On the other hand, if a good faith career change is established, the needs of the children are not adversely impacted by a reduction in support, and the change in income is permanent, then modification may be appropriate. For example, in *Wagner v. Wagner, supra*, following the entry of a child support order, the obligor parent left his employment at a private company for less lucrative employment in state government. His prior income had exceeded $170,000 in his last full year, including bonuses and other compensation, while his income at his new position was only $75,000. The parties stipulated that the obligor's career change was made in good faith, and the obligor explained that he left his prior employment because he believed his employer's profitability was short lived, and he gave reasons supporting this belief. The district court modified child support, but nevertheless calculated child support based on the obligor's base salary of $92,170 at his prior position.

On appeal, the Nebraska Supreme Court concluded it was an abuse of discretion for the district court to use the obligor's prior income rather than his present income and reversed and remanded for a recalculation of child support. The court emphasized that the obligor left his prior position in good faith because of concerns over his employer's profitability. *Id*. Also, because of the obligor's age, he was likely to be of retirement age by the time his present position ended. The court further reasoned that nothing in the record indicated that the amount he would be obligated to pay based on his present salary would impair the needs of the parties' child. *Id*.

On our de novo review of the record, we conclude the district court did not abuse its discretion in finding that Dustin did not establish a material change of circumstances based on his change of occupation. Although there is no evidence to suggest that Dustin's decision to change employment in order to have more time at home was made in bad faith, this was not a situation where Dustin's change of employment was prompted by economic considerations, such as concern over an employer's profitability. Rather, as we discussed above, Dustin's change of employment was motivated by personal wishes. Thus, this case is distinguishable from *Wagner v. Wagner*, 262 Neb. 924, 636 N.W.2d 879 (2001), where the obligor's good faith career change was motivated by external considerations, not by personal wishes. Instead, this case appears to be more similar to *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994), where although the obligor's change of employment was made in good faith, the equities did not support modifying child support based

on a present income that was less than the obligor's earning capacity. In sum, this case seems to fall more in line with those cases that, after considering the equities involved in a child support modification proceeding, have declined to modify child support based on an obligor's career change that was motivated by personal wishes. See, e.g., *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991) (reversing modification of child support where obligor's reduction in income was motivated by personal wishes, rather than unfavorable or adverse conditions in the economy, obligor's health, or other circumstances affecting earning capacity).

Our decision finds support when one considers that the paramount concern in child support cases remains the best interests of the child. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). Although there is minimal evidence in the record relevant to Eleanor's best interests, the record suggests that a reduction in Dustin's child support obligation would have negative consequences for Eleanor. Specifically, if Dustin prevailed on his application for modification, his child support obligation would fall from $549 to $355 per month, a reduction of $194, or approximately 35 percent. Given that Veronica is unemployed, this reduction in support undoubtedly would have a significant impact on Veronica's ability to meet Eleanor's needs. In this respect, this case is further distinguishable from *Wagner v. Wagner*, 262 Neb. 924, 636 N.W.2d 879 (2001), where the court reasoned that child support calculated using the obligor's present income of $75,000, rather than his prior income of $92,710, would not impair the child's needs. Notably, the custodial parent in *Wagner* earned $3,333 per month, unlike Veronica, who had no income at the time of trial.

In sum, based on our de novo review of the record, we conclude the district court did not abuse its discretion in dismissing Dustin's application for modification based upon its finding that Dustin failed to establish a material change of circumstances arising out of his change of employment.

## 2. SUBSISTENCE LIMITATION IN § 4-218

Dustin also assigns as error that his child support obligation improperly reduces his net monthly income below the basic subsistence limitation, in violation of § 4-218 of the guidelines. That section provides:

> A parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $981 net monthly for one person, or the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2), except minimum support may be ordered as defined in § 4-209.

Dustin argues that based on his gross monthly income of $2,080, his net income after deducting federal and state income taxes, FICA, and his prior child support obligation, is $1,439.69 per month. He contends that once the child support obligation from the present case of $549 per month is deducted, he is left with a net income of $890 per month.

Generally, in the absence of plain error, when an issue is raised for the first time in an appellate court, the issue will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted for disposition in the trial court. *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005). Plain error is error plainly evident from the record

and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). The decision to proceed on plain error is at the discretion of the appellate court. *Id.*

Dustin did not make an argument based on § 4-218 before the district court. While we have the discretion to proceed on plain error, we find no such error.

Similar to Dustin's reliance on § 4-217, which we addressed above, Dustin's reliance on § 4-218 depends upon the district court's acceptance of $2,080 as an accurate assessment of his gross monthly income and/or earning capacity. As we explained, this reliance is misplaced, because Dustin provided only minimal evidence relevant to determining his income and earning capacity, and because he failed to prove that his earning capacity decreased following entry of the original child support order. The Nebraska Supreme Court has approved the use of earning capacity, rather than present income, in determining the applicability of § 4-218. See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014) (holding that based on earning capacity calculated to be $1,720 per month, child support obligation of $305 per month did not reduce obligor's net income below basic subsistence limitation). Because Dustin did not establish that his earning capacity decreased following entry of the original child support order, he likewise did not establish a violation of § 4-218. Therefore, we find no plain error.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Saunders County.
AFFIRMED.