SHARON K. MULLER, NOW KNOWN AS SHARON K. KASPAR,
APPELLEE, V. LON R. MULLER, APPELLANT.

524 N.W.2d 78

Filed November 15, 1994.    No. A-93-1060.

Michael A. England, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellant.

Susan Koenig-Cramer for appellee.

IRWIN, MILLER-LERMAN, and MUES, Judges.

MUES, Judge.

Lon R. Muller appeals the judgment of the Douglas County District Court modifying the decree of dissolution which terminated his marriage to Sharon K. Muller, now known as Sharon K. Kaspar. On appeal, Muller assigns as error the district court's order as it pertains to child support, visitation, a life insurance policy to secure his child support obligation, and attorney fees. We affirm.

## FACTS

The district court for Douglas County dissolved the marriage of Muller and Kaspar on February 1, 1988, after approximately

$6^{1}/_{2}$ years of marriage. The decree of dissolution provided that Kaspar was awarded custody of the parties' two minor children, Eric, born November 25, 1984, and Kirk, born July 5, 1986, subject to Muller's rights to visitation. Muller was ordered to pay a total of $550 per month in child support for both children and to maintain a life insurance policy to secure those payments, naming the children as irrevocable beneficiaries. Muller's visitation rights were set forth in the original decree, but have since been modified on several occasions.

On July 27, 1992, Muller filed a petition to modify the decree, requesting that the court award him the tax exemption for the children, increase his visitation rights, and vacate the requirement that he maintain a life insurance policy as security for the child support, along with other requests not pertinent to this appeal. On August 25, Kaspar filed a cross-petition for modification, requesting the court, among other items, to increase Muller's child support obligation, alter the visitation schedule, and order payment of attorney fees.

On November 5, 1993, the district court entered its order, which in relevant part included an elimination of Muller's overnight visitation on Wednesdays during the summer if the children were on an out-of-town vacation with their mother, an increase in Muller's child support obligation from $550 to $650 per month for both children, a requirement that Muller continue maintaining a life insurance policy to secure his child support obligation, and an order that Muller pay $1,500 of Kaspar's attorney fees. The court denied Muller's request for additional, uninterrupted visitation during the Christmas holiday or spring break. Muller has appealed this order.

## ASSIGNMENTS OF ERROR

Muller alleges the district court erred in the following respects: (1) by increasing his child support obligation without proof of a material change in circumstances; (2) by failing to base the child support calculations on Kaspar's reasonable earning capacity; (3) by failing to consider all sources of income available to Kaspar in the child support calculations; (4) by modifying his visitation without proof of a material change in

circumstances; (5) by failing to grant him additional visitation at Christmas and spring break; (6) by requiring him to continue a life insurance policy to secure his child support obligation; and (7) by awarding Kaspar attorney fees in the amount of $1,500.

### STANDARD OF REVIEW

Appellate review of a judgment concerning modification of a marital dissolution decree is de novo on the record to determine whether the trial court abused its discretion concerning the modification. *Schmale v. Schmale*, 240 Neb. 499, 482 N.W.2d 268 (1992). Where the evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994).

### ANALYSIS

*Child Support.*

Modification of the amount of child support payments is an issue entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Marr v. Marr*, 245 Neb. 655, 515 N.W.2d 118 (1994); *Sabatka, supra*; *Brewer v. Brewer*, 244 Neb. 731, 509 N.W.2d 10 (1993). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Sabatka, supra*; *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993).

A party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was entered. *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994); *Sabatka, supra*. In the context of marital dissolutions, a

material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Peterson v. Peterson*, 239 Neb. 113, 474 N.W.2d 862 (1991); *McDougall v. McDougall*, 236 Neb. 873, 464 N.W.2d 189 (1991). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Sabatka, supra*; *Dobbins v. Dobbins*, 226 Neb. 465, 411 N.W.2d 644 (1987). The paramount concern and question in determining child support, whether in an initial marital dissolution action or in proceedings for modification of a decree, is the best interests of the child. *Sabatka, supra*; *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991); *Dobbins, supra*.

Both parties claimed a material change in circumstances warranting a modification in the court's original order with regard to matters pertaining to the support of the children. Muller did not directly seek a decrease in the amount of his child support, but rather sought, inter alia, to be granted the tax exemption for the children and elimination of his obligation to maintain life insurance on his life for the benefit of the children. Kaspar sought a direct increase in the dollar amount of the support.

This was the first modification of child support sought by either party since the decree was entered in February 1988. At that time, Muller's net monthly income was $2,190. Shortly before the divorce decree, Kaspar's employment had been terminated, and she was on severance pay when the decree was entered. However, the record supports the conclusion that Muller's child support obligation of $550, as determined in the original decree, was based on calculations from the Nebraska Child Support Guidelines, using Kaspar's salary from the employment from which she had just recently been severed. Her salary in that position had been virtually the same as that of Muller. Child support was set, according to the testimony of

Muller at the modification hearing, by a slight upward deviation ($550 rather than $512) from the strict application of the guidelines due to Kaspar's questionable situation and the uncertainty of her job future.

By the time of the modification hearing, Muller's net monthly income had increased to approximately $2,420 per month. Kaspar was not yet employed. She testified that despite efforts following the divorce, she was unable to find a job doing the type of work she had previously done before her layoff. She further testified that only two similar jobs existed in Omaha when she was laid off, hers and one other. After several attempts, she lowered her salary expectations, and 2 months before remarrying, in March 1989, she voluntarily stopped seeking employment. Kaspar had been unemployed for 6 years as of the time of the modification hearing.

In August 1991, Kirk was diagnosed with a medical condition requiring ongoing medical treatment and periodic monitoring. This treatment, together with routine medical treatment for Eric, resulted in Kaspar's making numerous trips with them to doctors and hospitals in the 2-year period preceding the modification hearing. The record also reflects that at the time of that hearing, Kaspar had a 2-year-old child from her current marriage. Kaspar testified that she initially chose not to work because she and her new husband believed it was in the best interests of the children for her to remain at home. Now, with her son's illness, she claims she could not work if she wanted to because of the need to constantly take him for medical treatment. Kaspar's current spouse earns approximately $57,000 gross income per year, an income which she admits is partially used to make up the deficit between the expenses of Eric and Kirk and Muller's child support obligation. She admits to being "able-bodied and able to work," although she estimates her current earning capacity at $7 per hour, for a net monthly amount of only $1,014. This is compared to a net monthly income of approximately $2,200 at the time of the decree. The uniqueness of her former employment, her 6 years out of the job market, and her "outdated" college business degree are all cited as reasons for such decrease in capacity to earn. In addition to the foregoing,

the evidence shows that Eric and Kirk are now attending school and that the overall expense for such schooling and related expenses have increased since the date of the initial divorce decree.

Muller alleges that the district court erred by increasing his child support obligation (1) without finding a material change in circumstances and (2) without considering Kaspar's reasonable earning capacity and all of Kaspar's sources of income.

Muller first claims that Kaspar's unemployment was contemplated at the time of the entry of the initial decree. Therefore, her current unemployment is not a material change sufficient to justify a modification under the well-known rule stated in *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994). We disagree. It is apparent from the record that at the time of the decree Kaspar anticipated returning to employment, but such plans were subsequently altered by a number of circumstances. The main thrust of Muller's appeal centers on his claim that the trial court failed to attribute a sufficient earning capacity to Kaspar for purposes of calculating each party's support obligation pursuant to the Nebraska Child Support Guidelines.

Muller argues that since Kaspar has remarried and has voluntarily chosen to remain at home with their children and a child of her new marriage rather than working, an amount should be attributed to Kaspar as her reasonable earning capacity. He argues that amount should be equivalent to his earnings, since each party was earning approximately equal amounts just prior to the divorce decree, which was the last time Kaspar was employed. Muller contends that Kaspar, as a custodial parent, should be held to the same standard as a noncustodial parent who is obligated to actually remit child support payments for the support of a child. He draws our attention to Supreme Court cases illustrating disfavor toward parents obligated to pay child support who seek to lessen their support obligation by voluntarily reducing actual earnings below their capacity to earn. See, e.g., *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991). He argues that Kaspar's reducing

her earnings by electing an "alternative means of providing financially for her children," i.e., ceasing outside employment and relying upon her new husband's income, should not result in her contributing a lesser share to the support of her children. Brief for appellant at 13.

We do not disagree with Muller's logic. The fact that a custodial parent is not ordered to remit a monthly dollar amount for child support does not release him or her from the obligation to contribute to the support of the children. Earning capacity of *each* parent, and not merely the actual income, is to be considered in determining the amount of child support to be paid by a parent. See, e.g., *Sabatka, supra*; *Schulze, supra*. See, also, Neb. Rev. Stat. § 42-364 (Cum. Supp. 1992). The Nebraska Child Support Guidelines, paragraph A, expressly recognize "the *equal* duty of *both* parents to contribute to the support of their children in proportion to their respective net incomes." (Emphasis supplied.) Kaspar cites us to no authority which would compel different rules to be applied to a custodial "nonpaying" parent than to the parent obligated to make child support payments with regard to the "earnings versus earning capacity" issue. Although the cases presented to the Supreme Court customarily involve a discussion of this issue in the context of the "paying" parent's earning capacity, see, e.g., *Sabatka, supra*; *Knippelmeier v. Knippelmeier*, 238 Neb. 428, 470 N.W.2d 798 (1991); and *Schulze, supra*, we find no indication in such opinions that a different rule would be applied merely because of the status of custodial versus noncustodial parent. Thus, we agree with Muller that the earning capacity of Kaspar, and not merely her actual earnings, was a relevant consideration by the district court in determining the amount of child support to be paid by Muller.

Generally, child support payments should be set according to the Nebraska Child Support Guidelines, which compute the presumptive share of each parent's child support obligation, but the court may deviate from the guidelines whenever the application of the guidelines in an individual case would be unjust or inappropriate. *Phelps v. Phelps*, 239 Neb. 618, 477 N.W.2d 552 (1991). See, also, *Sabatka, supra*; Nebraska Child Support Guidelines, paragraph C. The

Nebraska Supreme Court has approved of such deviation from the guidelines in cases where the actual earnings of a spouse obligated to pay child support were less than such spouse's earning capacity as determined by the circumstances of individual cases. Such "deviation" generally takes the form of attributing to the spouse an amount representing his or her capacity to earn and then calculating child support by factoring such amount, rather than actual earnings, into the worksheet provided for by the child support guidelines.

What Muller fails to acknowledge is that Kaspar took this approach at trial. She did not seek to have Muller's support obligation determined by a strict application of the child support guidelines. Such strict application would mean that Muller's share of child support would be computed with Kaspar's income at $0 and his at $2,420. Rather, Kaspar readily accepted that an amount should be attributed to her for her capacity to earn. Kaspar's child support calculation worksheet offered at the modification hearing showed $1,014 as her net monthly income (based on $7 per hour) and $2,420 as Muller's net monthly income. She concluded that Muller's child support should be $650 for two children and $425 for one child. Muller's worksheet shows each party with a net monthly income of $2,420, with his monthly obligation to be $573 for both children. The trial court's order is consistent with accepting Kaspar's calculation and her testimony that her earning capacity of $7 per hour was appropriate.

Thus, we view the dispositive issue to be whether the trial court abused its discretion in attributing an earning capacity to Kaspar of $7 per hour (net monthly income of $1,014) as opposed to $2,420. We conclude that it did not. The only direct evidence of Kaspar's earning capacity was the testimony of the parties. Kaspar estimated it to be as stated. She reached this conclusion because she had not worked for 6 years, her prior employment had been a unique position, and her degree was outdated. On the other hand, the only evidence presented by Muller was his conclusion that Kaspar's capacity to earn should be the same as his because their earnings were equivalent at a point just prior to the 1988 decree. Where the evidence is in conflict on a material issue of fact, the appellate court

considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). The decision of the trial court involved more than a blind determination of Kaspar's current earning capacity. Granted, she removed herself from the job market 2 months before she remarried and within 11 to 12 months following the decree of February 1988. Moreover, for the next 2½ years, up to August 1991, she continued to be unemployed, at her apparent election, based on the joint decision of her and her new husband. Thereafter, upon the diagnosis of Kirk's medical condition and at least up through the date of the modification hearing, her employability was affected due to necessary medical care of the children. Although Kaspar's voluntary nonemployment through August 1991 would not have been looked upon with favor had she attempted an increase in Muller's child support obligation by reason thereof, she did not make such application. Muller's child support of $550 per month, based on calculations using a net income figure for Kaspar of approximately $2,200 per month, continued until the recent order of the district court, despite her actual earnings throughout that time period of $0 per month. Although not directly relevant to the trial court's determination of child support at the modification hearing, it does mitigate against Muller's argument that Kaspar's unemployment was motivated by bad faith in an effort to reduce her earnings so that Muller's obligation would be increased. In light of the paucity of evidence offered by either party on Kaspar's actual earning capacity and considering that the trial court had the opportunity to observe the parties at trial and accepted Kaspar's version of the circumstances surrounding this issue, we are not inclined to disturb that court's determination.

We believe that the district court's attributing of an amount for Kaspar's earning capacity was proper. Under the circumstances of this case, although we may have been less receptive to Kaspar's "estimate" of her reduced earning capacity than was the district court, we cannot say that the amount attributed to her by that court was an abuse of

discretion. We also note that because of Kaspar's nonemployment, child-care expense was not addressed. Had Kaspar enjoyed *actual* employment, whether netting $1,014 or $2,420 per month income, child-care expense necessitated by such employment would have been subject to allocation between the parties. See Nebraska Child Support Guidelines, paragraph N. See, also, *Knippelmeier v. Knippelmeier*, 238 Neb. 428, 470 N.W.2d 798 (1991); *Fooks v. Fooks*, 226 Neb. 525, 412 N.W.2d 469 (1987). The court's calculation attributed income to Kaspar, without a corresponding child-care expense obligation being allocated to Muller. All things considered, the award was not untenable under the circumstances presented in this case.

*Visitation.*

Muller contends the district court abused its discretion when it modified his Wednesday night visitation during Kaspar's 6 weeks of custody in the summer and when it failed to award him extra visitation during Christmas and spring break. In a dissolution of marriage action, determinations concerning visitation with a minor are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of abuse of the trial judge's discretion. *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991). Child visitation rights for a parent are considered and determined in relation to the best interests of the children. *Huffman v. Huffman*, 236 Neb. 101, 459 N.W.2d 215 (1990). The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child. *Schulze v. Schulze*, 238 Neb. 87, 469 N.W.2d 143 (1991); *Norris v. Norris*, 2 Neb. App. 570, 512 N.W.2d 407 (1994).

October 17, 1989, was the last time visitation was modified between the parties before the modifications involved in the present action. At the time of the modification hearing, Eric and Kirk were 4 years older than they were when visitation was last modified. They had a new sibling from the remarriage of Kaspar. They expressed a desire to take extended vacations with both parents.

We must affirm the district court's determinations regarding modification of visitation unless the court abused its discretion. As we previously stated, an abuse of discretion is found only where the decision made by the district court is untenable and unfairly deprives a litigant of a substantial right or a just result. See, *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993). After our review of the record, we cannot say the district court abused its discretion by eliminating Muller's Wednesday night visitation during the summer when Kaspar has their custody and the children are out of town. This allows Kaspar to have uninterrupted vacation periods during the summer, the same as Muller enjoys during his 6 weeks of summer visitation. Regarding the denial of an extended period of visitation for Muller over the Christmas or spring break holidays, the record reflects an already somewhat complicated shifting of the children during the Christmas holiday to accommodate Christmas Eve, Christmas Day, New Year's Day, Kaspar's December birthday, and Muller's Wednesday night and weekend visitations. We cannot say that the trial court abused its discretion by refusing to define yet another scheduled visitation during this timeframe.

### Life Insurance Policy.

In the original decree, Muller was ordered to maintain a life insurance policy in an amount "sufficient to fund his child support obligation," naming his children as irrevocable beneficiaries as their interests may appear. Muller argues it was error for the court to continue this requirement in its modification order. The purpose of the order was apparently to secure Muller's child support obligation. As such, it is a form of child support and is a proper issue for modification. However, as with child support, in order to warrant a modification, the party seeking the modification must demonstrate that there has been a material change in circumstances. See, *Sabatka, supra*; *Wulff, supra*.

Muller argues there is no statutory authority to justify the ordering of security to insure a child support obligation. We disagree. On the date of the decree, Neb. Rev. Stat. § 42-371(5)

(Reissue 1988) (currently Reissue 1993) authorized the posting of security to insure the payment of child support. Section 42-371 (Reissue 1993) provides in pertinent part:

> Under the Uniform Interstate Family Support Act and sections 42-347 to 42-379, 43-290, 43-512 to 43-512.10, and 43-1401 to 43-1418:
>
> . . . .
>
> (5) The court may in any case, upon application or its own motion, after notice and hearing, order a person required to make payments to post sufficient security, bond, or other guarantee with the clerk to insure payment of both current and any delinquent amounts. Upon failure to comply with the order, the court may also appoint a receiver to take charge of the debtor's property to insure payment. Any bond, security, or other guarantee paid in cash may, when the court deems it appropriate, be applied either to current payments or to reduce any accumulated arrearage[.]

In *Casselman v. Casselman*, 204 Neb. 565, 284 N.W.2d 7 (1979), the court recognized that payments for child support and alimony were included under this statute. The Supreme Court, citing § 42-371(5), held that it was valid to order a person to post security to insure payment of a child support obligation. However, the court limited its holding by stating that "reasonable security for payment of . . . child support should be invoked only when *compelling* circumstances require it." (Emphasis supplied.) *Casselman*, 204 Neb. at 568, 284 N.W.2d at 9, citing *Wheeler v. Wheeler*, 193 Neb. 615, 228 N.W.2d 594 (1975).

The record is unclear as to what "compelling circumstances" existed at the time the decree was entered to warrant an order requiring Muller to provide security for his child support obligations. Moreover, the type of "security" ordered, i.e., an insurance policy on Muller's life, seems to do more to settle an estate upon the children at Muller's death than to secure payment of his support obligation while he is alive. Nevertheless, Muller did not appeal that portion of the original decree. An appellate court does not treat an action to modify a decree as a retrial of the original case or a review of the equities

of the decree. See, e.g., *Olmer v. Olmer*, 2 Neb. App. 178, 507 N.W.2d 677 (1993). Muller directs us to no material change in circumstances which has occurred since the entry of the decree, not anticipated at the time of the decree, that would alter the propriety of this requirement. Therefore, we must conclude that this assignment is without merit.

*Child Support Calculation.*

Muller points out that even by using Kaspar's monthly income figure, the child support guidelines provide that his obligation should be $642.90 for two children and $414.58 for one child, based upon the combined net income shown on Kaspar's worksheet of $3,433.49. The guidelines provide that with a net income of $3,450, total monthly support for two children should be $915. Muller's income, using Kaspar's worksheet, is 70 percent of the total income. His share would thus be $641 by a strict mathematical computation.

He also argues that if required to maintain a life insurance policy for the benefit of his children, he should be entitled to deduct the premium costs associated with that policy from his gross income for purposes of the child support calculations. He testified that he maintained two insurance policies with a total value of $60,000 at a cost of approximately $25 per month. The Nebraska Child Support Guidelines and the worksheet do not specifically authorize such a deduction, but deviations from a strict application of the guidelines are expressly permitted to avoid an unjust result. Kaspar's worksheet does not include a deduction for the premiums from Muller's income.

We observe that the benefit to Muller from being awarded the tax exemption for one of the children was also not included in the foregoing calculations on Kaspar's worksheet. The evidence suggests that the increase in Muller's net monthly income as a result of the additional tax exemption offsets the monthly insurance premium. In fact, it appears that it will exceed that premium. We cannot conclude, therefore, that the $9 deviation, arrived at without consideration of either of these figures, was an abuse of discretion under the facts of this case.

*Award of Attorney Fees.*

Muller's final assignment of error is that it was error to

award Kaspar attorney fees in the amount of $1,500. In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Hamm v. Hamm*, 228 Neb. 294, 422 N.W.2d 336 (1988); *Meyers v. Meyers*, 222 Neb. 370, 383 N.W.2d 784 (1986).

The amount of attorney fees and costs awarded by the district court is supported by sufficient evidence. The amount is not untenable. We find that the district court did not abuse its discretion in its award.

AFFIRMED.