JASON SELLERS, APPELLANT, V.
STEPHANIE SELLERS, APPELLEE,
AND STATE OF NEBRASKA,
INTERVENOR-APPELLEE.

___ N.W.2d ___

Filed September 1, 2015.    No. A-14-665.

1. **Modification of Decree: Child Support: Appeal and Error.** An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Child Support: Rules of the Supreme Court.** Interpretation of the Nebraska Child Support Guidelines presents a question of law.

4. **Judgments: Appeal and Error.** An appellate court resolves questions of law independently of the lower court's conclusion.

5. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

6. **Judges: Evidence: Appeal and Error.** The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion.

7. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

8. **Courts: Child Support.** The trial court has discretion to choose whether and how to calculate a deduction for subsequent children.

9. **Child Support.** No precise mathematical formula exists for calculating child support when subsequent children are involved, but the court must perform the calculation in a manner that does not benefit one family at the expense of the other.

10. **Modification of Decree: Child Support: Proof.** The party requesting a deduction for his or her obligation to support subsequent children bears the burden of providing evidence of the obligation, including the income of the other parent of the child.

11. **Child Support: Appeal and Error.** A party may raise two separate issues on appeal when a trial court allows a deduction for the obligor's support of subsequent children: (1) whether the court abused its discretion by allowing a deduction and (2) whether the court's method of calculation was an abuse of discretion.

12. **Records: Appeal and Error.** An appellate brief generally may not expand the evidentiary record and should limit itself to arguments supported by the record.

13. **Child Support: Appeal and Error.** Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion.

14. **Child Support.** In determining whether to order retroactive support, a court must consider the parties' status, character, situation, and attendant circumstances. As part of that consideration, the court must consider whether the obligated party has the ability to pay the lump-sum amount of a retroactive award.

15. **Modification of Decree: Child Support: Time.** Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification.

16. **Child Support: Child Custody.** In the determination of child support, the children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay.

17. **Evidence: Words and Phrases.** Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

18. **Trial: Evidence: Appeal and Error.** Upon a de novo review in an appellate court, incompetent, irrelevant, and immaterial evidence offered in the original trial, which was admitted over proper objections by the adverse party, will be disregarded.

Appeal from the District Court for Lincoln County: Richard A. Birch, Judge. Affirmed.

Monelle M. Nichols, of Nichols Law, for appellant.

Stephanie Sellers, pro se.

Claudine K. Thorne, Deputy Lincoln County Attorney, for intervenor-appellee.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Moore, Chief Judge.

## I. INTRODUCTION

Jason Sellers appeals from the order of the district court for Lincoln County, which modified his child support obligation to Stephanie Sellers, also known as Stephanie Rodriguez, for the support of the parties' minor children. Because we find no abuse of discretion in the court's modification of Jason's child support, we affirm.

## II. BACKGROUND

Jason and Stephanie were married in February 2001 and are the parents of three minor children. In March 2010, the district court dissolved Jason and Stephanie's marriage, awarded Stephanie custody of the parties' children, and ordered Jason to pay child support of $96 per month. Jason was incarcerated at the time the decree was entered.

In March 2013, Stephanie requested a review of Jason's child support, pursuant to Neb. Rev. Stat. § 43-512.12 (Cum. Supp. 2014), which provides for a review by the Nebraska Department of Health and Human Services (Department) "in cases in which a party has applied for services under Title IV-D of the federal Social Security Act . . . to determine whether to refer such orders to the county attorney or authorized attorney for filing of an application for modification." Jason failed to provide adequate financial information to the

Department, creating a rebuttable presumption that there had been a material change in his financial circumstances such that his child support obligation should be increased. See Neb. Rev. Stat. § 43-512.14 (Reissue 2008).

On December 11, 2013, following a review by the Department's "Review and Modification Unit," the State of Nebraska filed a complaint for modification of child support, requesting an increase in Jason's monthly child support obligation based on a change in circumstances to an amount consistent with the Nebraska Child Support Guidelines. Jason was personally served with the complaint on January 21, 2014.

After three continuances, two of which were at Jason's request, a modification hearing was held before the district court on June 17, 2014.

At the time of the modification hearing, Jason lived with his current wife, their 1-year-old son, and his 5-year-old stepson. Jason has been involved in his stepson's life since his birth and is the only father this child has ever known. Jason's wife is a stay-at-home mother.

At the time of the decree in March 2010, Jason was incarcerated for assault. The district court overruled Jason's relevance objection to the reason for his incarceration. Jason was released from prison in June 2010. Jason is now employed at a company where he earns $16.12 per hour and works 40 hours per week. He contributes to a retirement account through his employment at a rate of 4 percent. Jason has health insurance available to him through his employment, which insurance he provides for himself and his children. To provide this health insurance for the three minor children in this case, Jason pays an additional $135 per month above what it costs him to provide health insurance for himself.

Jason has been diagnosed with diverticulitis, and he testified about his costs for medication and surgeries resulting from the condition. Jason underwent three surgeries in the year prior to the hearing. According to Jason, his medical

providers have told him that the issues that led to his second and third surgeries could happen again and that it was "[j]ust a matter of time." Jason testified that over the last year, his medical expenses have been $30,000 or more, which expenses he believed included the cost that was covered by health insurance. Jason offered exhibit 1, which he stated contained his medical bills for the previous 1½ years. According to a typewritten summary page included in the exhibit, Jason's out-of-pocket medical costs from January through June 2014 were $13,734.29. The State objected to exhibit 1 because it included several bills for individuals other than Jason. The district court received exhibit 1 into evidence, stating that it would not take any irrelevant portions of the exhibit into account in reaching its decision. Jason testified that he did not know the limits, deductible, or maximum out-of-pocket expenses under his health insurance policy, as he did not pay attention to any such documentation received from his employer.

At the time of the modification hearing, Jason was current on his child support payments. He did not feel he would be able to pay child support of $712 per month as reflected in the child support calculation submitted by the State, and he testified that his ongoing medical bills would make it difficult for him to pay any amount of retroactive child support. Jason testified that he could possibly afford child support of $176 as reflected in one of his child support calculations.

Stephanie has been a respite provider for the past 5 years, but at the time of trial did not have current employment in that capacity because the individual she had been caring for had been placed in a nursing home. Stephanie earned $11,712 in 2013 and $13,899 in 2012. Stephanie testified that she does not have an illness or disability that prevents her from working full time. She receives public assistance in the form of food stamps, and the parties' children are covered under Medicaid. She has also received some assistance from her parents. She

has a boyfriend who is involved in the children's lives and "helps out."

Stephanie testified about her understanding of the health insurance Jason was providing for the children. According to Stephanie, the insurance became effective April 1, 2014. Based on documentation she received from the insurance company and discussion with Jason, Stephanie testified that the deductible was $4,500 for a family and $2,250 for a person. Stephanie understood the annual out-of-pocket maximum under the insurance plan was $7,000 for a family and $3,500 per person.

On June 24, 2014, the district court entered an order modifying Jason's child support obligation. The court found that since entry of the divorce decree in March 2010, there had been a material change in circumstances as a result of the increase in Jason's income. The court found that the parties were in agreement with respect to their income and earning capacities, and it established Stephanie's earning capacity for child support purposes at $1,257 per month and Jason's income at $2,794 per month. The court found that Jason was entitled to a deduction for his retirement contribution, for the cost of health insurance, and for the support of the one child of his current marriage. The court set the deduction for the child of Jason's current marriage at $234. The court did not allow a deduction for Jason's support of his stepchild. The court noted Jason's serious medical issues, but it observed that his actual income from 2013 was in excess of the amount attributed to him on the parties' child support calculations. The court found that any determination that Jason's past medical problems would cause a future reduction in his income would be speculative. In determining that Jason failed to produce sufficient evidence to rebut the presumption that the child support guidelines should be applied, the court noted that Jason testified he did not know the amount of his deductible, that a number of the medical bills Jason submitted as evidence were for other individuals, that some

of the bills were outside the dates within which they were alleged to have been incurred, and that there was no way to determine what Jason's final liability may have been on such medical bills. The court ordered Jason to pay, commencing on February 1, 2014, child support of $712 per month for three children, $597 per month for two children, and $397 per month for one child. The court also ordered Jason to continue to maintain health and medical insurance on the minor children through his employer if available to him at a reasonable cost and to pay 63 percent of any uninsured health or medical expenses for the minor children in excess of $480 per child per year.

## III. ASSIGNMENTS OF ERROR

Jason asserts, restated, that the district court erred in (1) calculating child support with respect to the amount used as a deduction for regular support for other children, (2) finding insufficient evidence to rebut the strict application of the guidelines and/or failing to allow a deviation for his medical expenses, (3) failing to recognize and apply the correct basic subsistence limitation in calculating child support, (4) entering a child support order in contradiction of public policy and legislative intent that would require Jason to seek public assistance, (5) ordering the payment of retroactive support, (6) allowing evidence of the reason for Jason's previous incarceration, (7) ordering Jason to pay for 63 percent of the unreimbursed health care costs, and (8) denying Jason's application to proceed in forma pauperis.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Schwarz v. Schwarz*, 289 Neb. 960, 857 N.W.2d 802 (2015). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant

of a substantial right and denying just results in matters submitted for disposition. *Id.*

[3,4] Interpretation of the Nebraska Child Support Guidelines presents a question of law. *Schwarz v. Schwarz, supra.* An appellate court resolves questions of law independently of the lower court's conclusion. *Id.*

[5,6] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion. *Id*.

## V. ANALYSIS

### 1. Child Support Calculation

[7] A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014). The modification proceedings in this case were initiated after Stephanie's request for a review by the Department, and Jason's failure to provide adequate financial information created a rebuttable presumption that his income had changed from the time of the decree. See §§ 43-512.12 and 43-512.14.

The district court found a material change in circumstances and modified Jason's child support obligation, increasing it from $96 to $712 per month for three children. In doing so, the court established Stephanie's earning capacity for child support purposes at $1,257 per month and Jason's income at $2,794 per month. It found that Jason was entitled to deductions for his retirement contribution, the cost of health

insurance, and $234 in support for the child of his current marriage. The court did not allow a deduction for Jason's stepchild or a deviation in light of his medical expenses. Although Jason asserts that the district court erred in calculating his child support obligation, he does not dispute that his income has increased since entry of the divorce decree, and he does not assign error to the income amounts used by the court in its calculation. He specifically assigns error to the amount used by the court as a deduction for regular support for other children, the court's finding insufficient evidence to rebut the strict application of the guidelines and/or failure to allow a deviation for his medical expenses, and the court's failure to recognize and apply the correct basic subsistence limitation in calculating child support. He also asserts that the court erred by entering a child support order that would require him to seek public assistance. We address each of these arguments separately below.

(a) Regular Support for
Other Children

The district court allowed a deduction of $234 per month for Jason's subsequently born child. The Nebraska Child Support Guidelines allow for a deduction for biological or adopted children for whom the obligor provides regular support. Neb. Ct. R. § 4-205(E). Jason argues that his stepchild should have also been taken into account in this deduction. Although Jason's support of this child is to be commended, there is no provision in the guidelines that would allow a deduction for a child other than a biological or adopted child.

[8-11] Jason also takes issue with the manner in which the trial court calculated the deduction for his subsequent child. The trial court has discretion to choose whether and how to calculate a deduction for subsequent children. *Schwarz v. Schwarz*, 289 Neb. 960, 857 N.W.2d 802 (2015). No precise mathematical formula exists for calculating child support when subsequent children are involved, but the court must

perform the calculation in a manner that does not benefit one family at the expense of the other. *Id.* The party requesting a deduction for his or her obligation to support subsequent children bears the burden of providing evidence of the obligation, including the income of the other parent of the child. *Id.* A party may raise two separate issues on appeal when a trial court allows a deduction for the obligor's support of subsequent children: (1) whether the court abused its discretion by allowing a deduction and (2) whether the court's method of calculation was an abuse of discretion. *Id.*

In this case, the district court considered Jason's income alone and what his obligation would be for his four biological children and divided that total obligation by four to arrive at an amount per child. The deduction of $234 per month for the subsequently born child was used in the State's child support calculation. The State argues that this formula treats all of Jason's children fairly and does not provide a benefit to either his previous children or his subsequently born child. We agree.

The calculation adopted by the district court treats all of Jason's biological children nearly identically. The court awarded child support of $712 per month for three children, based upon the child support guidelines, which represents 25.48 percent of Jason's gross income of $2,794, or 8.49 percent per child. The deduction of $234 for the child of his current marriage represents 8.38 percent of Jason's gross income. The district court did not abuse its discretion in calculating the deduction allowed for Jason's subsequently born child.

### (b) Deviation for
### Medical Expenses

Jason asserts that the district court erred in finding insufficient evidence to rebut the strict application of the guidelines and/or failed to allow a deviation for his medical expenses. Neb. Ct. R. § 4-203 (rev. 2011) provides in part:

> The child support guidelines shall be applied as a rebuttable presumption. All orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied.

Section 4-203(A) allows for a deviation "[w]hen there are extraordinary medical costs of either parent or child." Jason argues that diverticulitis is a costly and serious medical condition which warranted relief from the strict application of the guidelines.

At the modification hearing, Jason testified about the three surgeries he underwent in the year prior to the modification hearing due to his diverticulitis diagnosis and testified that the issues that led to his second and third surgeries could recur in time. Jason did not present any medical testimony about the nature of his condition, what future problems are likely to occur, or the day-to-day ongoing medical expenses associated with it, extraordinary or otherwise. He testified that he had incurred medical expenses in the previous year totaling over $30,000 or more. He acknowledged, however, that this amount included what was covered by his health insurance. According to the summary page of exhibit 1, Jason incurred uncovered medical expenses totaling $13,734.29 in the first 6 months of 2014. We note, as did the district court, that exhibit 1 includes bills for individuals other than Jason and outside of the 6-month period purportedly covered by the summary page. Jason was unsure about the limits of his health insurance policy, including the amount of his deductible and maximum out-of-pocket expenses. He testified that the health insurance he carried for himself was the same as what he provided for the children in this case. Stephanie testified, based on conversations with Jason and information she received from the insurance company, about the health insurance policy limits, including a family deductible of $4,500,

individual deductible of $2,250, annual family out-of-pocket maximum of $7,000, and annual individual out-of-pocket maximum of $3,500. The court also received into evidence documentation from the health insurance company of the policy limits.

The district court noted that Jason has had serious medical issues that have affected his health, but it observed that his actual income from 2013 exceeded the amount attributed to him in the parties' proposed child support calculations. The court concluded that there was no way to determine Jason's final liability on the medical bills included in exhibit 1. Accordingly, the court concluded that Jason failed to present sufficient evidence to rebut the presumption that the child support guidelines should be applied. We agree. There is conflicting evidence in the record about Jason's medical expenses and nothing beyond speculation to show what his future medical expenses might be. Because Jason did not present sufficient evidence to support a deviation for extraordinary medical expenses, the court did not abuse its discretion in declining to allow such a deviation.

### (c) Basic Subsistence Limitation

Jason asserts that the district court erred in failing to recognize and apply the correct basic subsistence limitation in calculating child support. Neb. Ct. R. § 4-218 (rev. 2015) currently provides:

> A parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $981 [$973 at the time of the modification hearing in this case] net monthly for one person, or the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2), except minimum support may be ordered as defined in § 4-209.

Jason argues that this section expresses two different basic subsistence limitations. Specifically, he argues that the

limitation of $973 in place at the time of trial is for one person while the poverty guidelines updated annually in the Federal Register based on household size are applicable here. The State argues that the district court properly applied the limitation of $973 in effect at the time of the modification hearing, citing to *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005).

This court recently addressed the question of application of § 4-218 of the child support guidelines and the proper basic subsistence limitation to apply when an obligor's household consists of more than one person. See *Lasu v. Issak, ante* p. 83, ___ N.W.2d ___ (2015). In that case, we utilized the poverty guidelines for the obligor's entire household as found in the Federal Register as opposed to the figure for one person as a starting point in determining the obligor's child support. In doing so, we distinguished *Henke*. We acknowledged that in *Henke*, although the father-obligor had another family to support, this court did not consider the poverty guidelines for his family of five when reviewing the father's support obligation, and instead appeared to utilize the basic subsistence limitation for one person in determining support for the child at issue in the paternity action. However, as we discussed in *Lasu*, the only assigned error on cross-appeal by the father in *Henke* was application of the poverty guidelines with respect to the retroactive support and the issue of whether to apply the poverty guideline for one person or for the total household in determining the child support award was not raised.

Following our decision in *Lasu*, we agree with Jason that it is appropriate to consider the poverty guidelines as updated in the Federal Register that were in place at the time of this modification proceeding, pertinent portions of which were received as exhibit 4. Utilizing the child support calculation worksheet adopted by the district court, Jason's monthly net income is $1,829, after the $234 deduction allowed for Jason's subsequently born child. After then subtracting the child support obligation of $712 as determined by the district

court, Jason has remaining net monthly income of $1,117. Using the poverty guideline figure for a household of four as set forth in exhibit 4, Jason contends that the guidelines reflect a monthly limitation of $1,987.50, which greatly exceeds his actual remaining net monthly income of $1,117. Thus, Jason asserts that the child support obligation imposed by the district court violates § 4-218.

We first note that utilizing the net monthly income for Jason after giving him credit for his subsequent child and then in turn considering this child in the household for purposes of the basic subsistence limitation essentially gives duplicate consideration for the subsequent child. Thus, we think it appropriate at the outset of our analysis on this issue to add back the $234 deduction allowed for Jason's subsequently born child in the child support calculation, which results in a total of $1,351 remaining net income for Jason's current household after the child support order of $712 is subtracted.

In further applying the poverty guidelines as updated annually in the Federal Register, we are also faced with the question of how to determine the household income and size. The applicable annual update published in the Federal Register and received into evidence as exhibit 4 in this case states:

Note that this notice does not provide definitions of such terms as "income" or "family," because there is considerable variation in defining these terms among the different programs that use the guidelines. These variations are traceable to the different laws and regulations that govern the various programs. This means that questions such as "Is income counted before or after taxes?", "Should a particular type of income be counted?", and "Should a particular person be counted as a member of the family/household?" are actually questions about how a specific program applies the poverty guidelines. All such questions about how a specific program applies the guidelines should be directed to the entity that

administers or funds the program, since that entity has the responsibility for defining such terms as "income" or "family," to the extent that these terms are not already defined for the program in legislation or regulations.

Thus, we determine that for purposes of setting child support, the questions of how to define income and how to count a family or household under the poverty guidelines as updated annually in the Federal Register should be determined in a manner consistent with the Nebraska Child Support Guidelines.

Jason's argument regarding § 4-218 focuses only on his income, as his current wife is not working outside the home. We note that in *Lasu v. Issak, ante* p. 83, ___ N.W.2d ___ (2015), both the father and his wife were working, and thus, we used their combined incomes in applying the poverty guidelines contained in the Federal Register. However, in considering application of the poverty guidelines as a mechanism to limit Jason's child support obligation for his three prior children in this case, we also consider whether it is appropriate to impute income to Jason's current wife. As mentioned previously, the poverty guidelines update in the Federal Register does not define "income," but the Nebraska Child Support Guidelines recognize that earning capacity may be considered in lieu of a parent's actual, present income. Neb. Ct. R. § 4-204. In applying the child support guidelines, courts in Nebraska often attribute income to a nonworking parent in calculating child support. See, e.g., *Muller v. Muller*, 3 Neb. App. 159, 524 N.W.2d 78 (1994) (no abuse of discretion found where district court attributed income based on earning capacity to mother who decided not to work to care for children). On the other hand, in *Collins v. Collins*, 19 Neb. App. 529, 808 N.W.2d 905 (2012), we found that the trial court abused its discretion in imputing minimum-wage earning capacity to the nonworking mother where the evidence demonstrated that she could not attain minimum-wage earning capacity by reasonable efforts.

In this case, both parties attributed earning capacity income to Stephanie as if she were working full time and earning minimum wage. Under the circumstances of this case, we conclude that it is appropriate, in applying the poverty guidelines, to likewise attribute earning capacity income to Jason's current wife. The only evidence in the record is that she is a stay-at-home mother; there is no evidence that she could not attain minimum-wage earning capacity by reasonable efforts. By also attributing $1,257 gross monthly income to Jason's current wife (the same as for Stephanie) and using the trial court's worksheet, her net monthly income would be $1,061. If we add that figure to Jason's net income of $1,351 (after the $712 child support is subtracted), we arrive at total household net monthly income of $2,412, which exceeds the basic subsistence limitation of $1,987.50 for a family of four. For the sake of completeness, we considered the household size as four to include Jason's stepson, since we imputed income to Jason's current wife.

In conclusion, we determine that while it was appropriate for the district court to consider the poverty guidelines as updated in the Federal Register for Jason's household, the district court's award of child support ultimately did not violate § 4-218.

### (d) Public Policy

[12] Jason asserts that the district court erred in entering a child support order in contradiction of public policy and legislative intent that would require him to seek public assistance. Much of his argument in support of this assignment of error focuses on Stephanie's finances and decisions with respect to employment or is composed of colorful historical references. Although his brief states that his pay is now being garnished to pay child support arrears and that he is trying to qualify for state assistance, this information is outside of the record presented on appeal. An appellate brief generally may not expand the evidentiary record and should limit itself to

arguments supported by the record. *Galaxy Telecom v. SRS, Inc.*, 13 Neb. App. 178, 689 N.W.2d 866 (2004). To the extent that Jason's arguments relate to his assignments of error with respect to retroactive support, the correct basic subsistence limitation, and his requested deviation for his medical expenses, we have addressed those arguments elsewhere in this opinion. This assignment of error is without merit.

### (e) Conclusion Regarding Child Support

The district court did not abuse its discretion in determining Jason's child support obligation for the children at issue in this case.

### 2. RETROACTIVE MODIFICATION

Jason asserts that the district court erred in ordering the payment of retroactive support. The complaint for modification in this case was filed in December 2013, and a modification hearing was initially scheduled for February 18, 2014. The hearing, however, was continued three times before finally occurring on June 17. The first continuance was at the State's request to allow for the required 30 days between the time Jason was personally served with the complaint on January 21 and the hearing. Two additional continuances were granted at Jason's request, the first because Jason was undergoing a medical procedure and the second because Jason's counsel needed time to determine whether there was a conflict with her representation of Jason. The court made the modification of Jason's child support obligation retroactive to February 1, 2014.

[13-16] Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). In determining whether to order retroactive support, a court must consider the parties' status, character, situation,

and attendant circumstances. *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013). As part of that consideration, the court must consider whether the obligated party has the ability to pay the lump-sum amount of a retroactive award. *Id.* Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification. *Id.* In the determination of child support, the children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay. *Id.*

Jason argues that an award of retroactive support will not allow him to meet his child support obligation to the children in this case and support his new family. Jason argues further that the district court should have also taken his extensive medical expenses into consideration. He agrees, however, that February 1, 2014, was the correct date for any retroactive award, given that he was not served with notice of the complaint until January 21.

As discussed above, there was conflicting evidence about Jason's uncovered medical expenses and no evidence to show the extent of any ongoing future medical expenses. The court did take Jason's medical expenses into consideration in making the award retroactive to February 2014 rather than January. Under the circumstances of this case, we find no abuse of discretion in the court's award of retroactive support.

### 3. EVIDENCE OF PREVIOUS INCARCERATION

[17,18] Jason asserts that the district court erred in allowing evidence of the reason for his previous incarceration. He argues that he was unfairly prejudiced by the admission of this evidence. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

*Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). Neb. Rev. Stat. § 27-402 (Reissue 2008) provides in part that "[e]vidence which is not relevant is not admissible." "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Neb. Rev. Stat. § 27-403 (Reissue 2008). The fact of Jason's incarceration at the time of the decree was relevant to show that there had been a change in his financial circumstances warranting a modification of his child support obligation. While the reason for his incarceration was not relevant to that determination, we see no evidence that the district court placed undue emphasis on or even considered that fact in making its determination with respect to child support. Further, upon a de novo review in an appellate court, incompetent, irrelevant, and immaterial evidence offered in the original trial, which was admitted over proper objections by the adverse party, will be disregarded. *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003). We have disregarded the reason for Jason's incarceration in our de novo review. This assignment of error is without merit.

### 4. Unreimbursed Health Care Costs

Jason asserts that the district court erred in ordering him to pay for 63 percent of the unreimbursed health care costs. He does not separately argue this assignment of error, only mentioning it as error in connection with his arguments about the correct basic subsistence limitation and award of retroactive support which we have already addressed above. Jason's assertions about unreimbursed health care costs amount to an argument that he cannot afford to pay the award of 63 percent.

Neb. Ct. R. § 4-215(B) (rev. 2011) states in relevant part: "All nonreimbursed reasonable and necessary children's health care costs in excess of $480 per child per year shall be allocated to the obligor parent as determined by the court, but shall not exceed the proportion of the obligor's parental

contribution (worksheet 1, line 6)." Under the district court's calculations in this case, Jason's proportion of the parental contribution is 63 percent. We have already found no abuse of discretion in the court's child support calculation. We also note the evidence shows that the children's medical expenses are largely covered by Medicaid. Further, there is nothing in the record to show that the children have any unusual or extensive medical expenses. Jason has not shown what impact, if any, the award of 63 percent of the nonreimbursed medical expenses will actually have on his finances. This assignment of error is without merit.

### 5. Application to Proceed
### In Forma Pauperis

Jason asserts that the district court erred in denying his application to proceed in forma pauperis in prosecuting his appeal from the June 24, 2014, order. Jason filed his notice of appeal on July 18, indicating that he was "delay[ing]" deposit of the docket fee and costs pending a ruling on his in forma pauperis application. The application to proceed in forma pauperis and poverty affidavit was filed on July 22 and was denied by the district court on that same date. The clerk's certificate in our transcript shows that the docket fee was paid on July 18, and the cash bond was paid on July 22. After the district court denied Jason's request to proceed in forma pauperis on July 22, he had 30 days to appeal the ruling or proceed by paying the docket fee. See, Neb. Rev. Stat. § 25-2301.02(1) (Reissue 2008); *Glass v. Kenney*, 268 Neb. 704, 687 N.W.2d 907 (2004); *Martin v. McGinn*, 265 Neb. 403, 657 N.W.2d 217 (2003). Because Jason chose to pay the docket fee, he cannot now be heard to complain of this issue.

### VI. CONCLUSION

Because we find no abuse of discretion in the district court's modification of Jason's child support, we affirm.

Affirmed.